IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHRISTY LYNN MOWERY, )
)
    Plaintiff, )
)
vs. ) Case No. CIV-14-1422-HE
)
CAROLYN W. COLVIN, acting )
Commissioner Social Security )
Administration, )
)
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) determined that Christy Lynn Mowery (Plaintiff) was not entitled to disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Judge Joe Heaton referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 3. The parties then consented to have the undersigned conduct all further proceedings, including the entry of a final judgment. Doc. 13. Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the undersigned affirms the Commissioner's final decision.

**I.    Administrative proceedings.**

The Social Security Administration (SSA) denied Plaintiff's claim for

disability insurance benefits at the State agency level. AR 285, 287, 308-11, 315-17. Plaintiff challenged that result, and an Administrative Law Judge (ALJ) conducted a hearing. *Id*. 318-19, 32-70. The ALJ issued an unfavorable decision, but the SSA Appeals Council remanded the matter because of errors – of no relevance here – in determining Plaintiff's past work and credibility. *Id*. at 289-303, 304-07. The ALJ then held two supplemental hearings before he determined, once again, that Plaintiff was not disabled. *Id*. at 71-182, 183-284, 9-24. The Appeals Council declined Plaintiff's request for review, *id*. at 1-4, and Plaintiff filed this action for judicial review. Doc. 1.

## II. Disability determination.

Plaintiff applied for disability insurance benefits on January 11, 2008, alleging disability as of January 1, 2003, at the age of thirty-two. AR 470. Plaintiff's earnings records establish she had enough quarters of coverage to remain insured for disability insurance benefits only through September 30, 2006. *Id*. at 10.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement

applies to the claimant's inability to engage in any substantial gainful activity, and not just [her] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

The Commissioner applies a familiar five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ will conduct a residual functional capacity (RFC)[1] assessment at step four to determine what Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 404.1545(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

### III. The ALJ's findings.

Adhering to the sequential inquiry, the ALJ found that through September 30, 2006, the date Plaintiff last met the insured status requirements, she: (1) suffered from severe depression, a mood disorder, a bipolar disorder, anxiety, panic attacks with agoraphobia, and tobacco abuse; (2) had the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations;[2] (3) could perform her past relevant work as a nurse assistant, DOT No. 355.674-014, 1991 WL 672944; and, alternatively (4) could perform other jobs existing in significant numbers in the national economy. AR 12-24.

### IV. Discussion.

#### A. Review standards.

A court reviews the Commissioner's final "'decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied.'" *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (citation omitted); *see Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax,* 489 F.3d at 1084. In reviewing the ALJ's opinion, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary*

---

[2] Specifically, the ALJ limited Plaintiff to work requiring her to understand, remember, and carry out only detailed, non-complex instructions. AR 16-17.

4

*v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

### B. Plaintiff had to establish disability on or before September 30, 2006.

"An important requirement in this case is that [Plaintiff] had to show [s]he was disabled on or before h[er date last insured – September 30, 2006]." *Vititoe v. Colvin*, 549 F. App'x 723, 728 (10th Cir. 2013) (claimant had to establish on or before his date last insured he could not engage in any substantial gainful activity for a continuous twelve-month period); *see Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (holding "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status").

### C. Claimed error.

Plaintiff generally contends the ALJ "failed to include all of [her] impairments in the [RFC] determination." Doc. 15, at 10. She faults the RFC assessment on the following three, specific grounds.

#### 1. The ALJ identified severe impairments at step two but erred by including no resulting limitations from those impairments in assessing Plaintiff's RFC.

Plaintiff argues that "[a]mong the impairments the ALJ found severe were [her] panic disorder with agoraphobia, anxiety, and tobacco abuse" but he then failed to "include any limitations in the RFC, which would result from these impairments . . . ." *Id.* She claims "[t]he ALJ failed to explain how impairments

5

he found severe at step two became inconsequential at steps four and five . . . ."

*Id.*

The Tenth Circuit rejected a similar claim in *Banks v. Colvin*, 547 F. App'x 899, 903 (10th Cir. 2013), concluding there was no "internal inconsistency in the ALJ's conclusion that [Plaintiff's] medical signs were mild at step four despite finding her depression a 'severe' impairment at step two." The court explained why this is so:

> The reason is simple: step two and step four are different standards. To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). To find a disability at step four, on the other hand, requires that the claimant's specific functional limitations are such that she is unable to perform her past relevant work. 20 C.F.R. § 404.1520. Thus, a step-two determination that [Plaintiff's] mental impairment is "severe" only allows the sequential process to proceed; it does not reflect the severity of her functional limitations relevant to step four.

*Id.*

Here, the ALJ accounted for the limitations caused by Plaintiff's severe impairments – with one exception[3] – by restricting her to work requiring she

---

[3] That exception is the ALJ's tobacco abuse finding. Nothing in the record supports such a medically determinable impairment – whether severe or not – and Plaintiff does not maintain otherwise or claim any functional restriction related to tobacco abuse. *See* Doc. 15. It appears the ALJ's inclusion of the impairment is nothing more than a harmless mistake in decision writing.

6

understand, remember, and carry out only detailed, non-complex instructions. AR 16-17. Plaintiff's claim of legal error is unavailing.

### 2. The ALJ's failure to address the observations of SSA field-office employee Rita Rains.

Plaintiff next claims "[o]ne important element in the ALJ's error arises from his failure to consider the observations from Rita Rains, an SSA field office employee . . . ." Doc. 15, at 11. On September 25, 2008, Ms. Rains labeled Plaintiff "a basket case" in finding good cause for Plaintiff's late filing of her Request for Reconsideration at the State agency level. AR 314. Ms. Rains noted Plaintiff "has had mental problems since about 1990," "cannot follow through on anything and did not understand anything that she needed to take action to appeal her claim," and "does not always understand the results of her actions, and inspite [sic] of a medication regimen, she still has numerous episodes of manic and depressive behaviors." *Id.* She also observed during an October 28, 2008 telephonic interview that Plaintiff "has a lot of mental problems, had difficultly understanding much of what we discussed." *Id.* at 571.

Plaintiff correctly notes that the regulations provide the agency "will consider all of the evidence presented, including . . . observations by our employees." 20 C.F.R. § 404.1529(c)(3); *see* Doc. 15, at 12-13. SSR 96-7p states "[i]n evaluating the credibility of the individual's statements, the adjudicator must also consider any observations recorded by SSA personnel who have

previously interviewed the individual, whether in person, or by telephone." 1996 WL 374186, at *8 (July 2, 1996). But Plaintiff fails to acknowledge Ms. Rains made her observations approximately two years after Plaintiff's date last insured.

"[T]he relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." *Potter*, 905 F.2d at 1348-49. Plaintiff makes no argument that Ms. Rains' observations related back to the relevant time period, or that it sheds light on her condition during that period. *See Saum v. Astrue*, 09-cv-02091-REB, 2010 WL 3874387, at *5 (D. Colo. Sept. 29, 2010) (unpublished order) ("[E]vidence beyond the period of disability may be considered to the extent it sheds light on the nature or progression of a claimant's impairments . . . ." (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)). The ALJ omission of Ms. Rains' observations was not error, as her observations outside the insured period do not serve as evidence of a disability prior to the expiration of her insured status.

### 3. The ALJ's alleged disregard of Mr. Roberts' letter.

The ALJ based his assessment of Plaintiff's RFC, in part, on the opinions of Alvin Smith, Ph.D., a medical expert who reviewed the medical records and completed a Medical Interrogatory. AR 992-99. In her third specific claim of error, the Plaintiff faults the ALJ's reliance on Dr. Smith's retrospective

8

opinions[4] and maintains "the ALJ disregarded the only opinion evidence from

---

[4]  The ALJ did not rely only on Dr. Smith's opinions. He gave "greater weight to the contemporaneous treatment notes and [Plaintiff's] statements to her mental health care providers" than to her testimony and that of her spouse and evidence her relatives submitted. AR 18. He found Plaintiff "appear[ed] to overstate her limitations" during the hearings, and "when viewed with the statements she was making to her mental health care providers observations made in treatment notes at the relevant period." *Id.* at 17-18. Plaintiff does not challenge these credibility findings. *See* Doc. 15. The ALJ also noted the sparse medical evidence of record from the relevant period:

> The contemporaneous treatment records from 2006 and early 2007 are inconsistent with the level of limitation described by the claimant and her spouse at the hearings and with the 2012 letters from other family members (Exhibits 25F, 27F). There is little medical evidence of record relevant to period prior to her date last insured. She did get mental health medication from her primary care physician, Dr. Tran in 2006, and she did report to the Central Oklahoma Community Mental Health Center in September 2006 and obtained diagnosis of: mood disorder (rule out bipolar II) and panic disorder with agoraphobia (Exhibit 11F). Beginning in September 2006, she was prescribed various antidepressants, anti-anxiety, and mood stabilizing drugs through Central Oklahoma Community Mental Health Center (Exhibit 11F). She was counseled by Larry Roberts, MS, LMFT, a therapist at Lifesong Counseling Service from September 1, 2006 through November 16, 2006 (Exhibit 5F). However, her first counseling session at Central Oklahoma Community Mental Health Center was in January 2008 more than one year after her date last insured and more than one year after her September 2006 initial assessment at Central Oklahoma Community Mental Health Center (Exhibit 11F/101). Visits with her psychiatrist and with her individual therapists extend past the review period here, i.e., September 30, 2006, but indicate she had significant early progress.

AR 18.

the relevant period . . . ," a February 28, 2008 letter from Larry Roberts, MS, LMFT, who saw Plaintiff and her husband for family counseling from September 1, 2006 through November 17, 2006. Doc. 15, at 15.

The ALJ unquestionably considered Mr. Roberts' opinions:

> On February 28, 2008, Larry Roberts, the claimant's licensed marital and family therapist, noted that he had historically treated the claimant for anxiety, panic attacks, and depression from September through November 2006. He noted that he did no diagnostics, provided no psychological testing or medication, and performed no formal evaluation. He noted that the claimant appeared to have difficulty traveling without her husband due to her reported fear of dying in a car accident (Exhibit 5F). This opinion is given very little weight as this individual is not an acceptable source of medical evidence (20 CFR 404.1513). There was a relatively brief treatment period and the claimant was noted to be improving on medication. The February 2008 letter from Mr. Larry Roberts (Exhibit 5F) opined that the claimant's mental health impairment significantly interfered with her ability to function socially and occupationally as evidenced by her apparent "difficulty travelling without her husband due to her reported fear of dying in a car accident" (Exhibit 5F/1). This opinion is given little weight. As noted by the impartial medical expert at the February 2013 hearing, the claimant was working through various family history issues and would have experienced some ups and downs in anxiety levels; however, the claimant's symptoms were attenuated with medication and therapy, as noted in the treatment records from Central Oklahoma Community Mental Health Center.

AR 21.

In challenging the ALJ's decision to give Mr. Roberts' opinions little weight, Plaintiff does not fault his stated rationale. She does not take issue with the ALJ's finding that Mr. Roberts is not an acceptable source of medical

10

evidence; the period of treatment was brief; he did not support his opinions with the results of any testing; and Plaintiff was improving on medication. *See* Doc. 15, at 15-16. Instead, Plaintiff suggests – without pertinent legal support – that the ALJ, having found Plaintiff's anxiety and panic attacks with agoraphobia to be severe at step two, was somehow bound to fully credit Mr. Roberts' opinions in his assessment of Plaintiff's RFC. *Id.* Plaintiff fails to establish reversible error.

V.  **Conclusion.**

The court affirms the Commissioner's decision.

ENTERED this 19th day October, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE